BARBER EXAMINERS — MINIMUM PRICES The State Board of Barber Examiners may set a minimum price schedule for the licensed members of the barber profession pursuant to existing legislation so long as such a price schedule is not arbitrary or capricious but bears a direct relationship to the health, safety or welfare of the people of Oklahoma. Absent express legislation to the contrary, the general rule is that a regulatory agency may legally set minimum prices made to the public for certain services only if such minimum prices bear a direct relationship to the health, safety or welfare of the public at large. Such a determination is a question of fact to be determined under the circumstances of each case. If such minimum charges are found in a given case to be lawful, the method of imposing said charges, whether on a uniform statewide basis or a county-by-county basis will again depend on the particular facts of the case. The Attorney General is in receipt of your opinion request wherein you ask the following questions: "1. May the State Board of Barber Examiners set a minimum price schedule for the licensed members of the barber profession ? "2. May a state regulatory board legally prescribe, either directly or indirectly, minimum charges made to the public for services rendered by a group of persons engaging in the same business? "3. If such charges are proper, may such boards set the fees on a county-by-county basis or must such charges be set uniformly for the whole state? "4. Can some districting system other than on a county-by-county basis be established for the regulation of charges by members of a profession?" The State Board of Barber Examiners has statutory authority to set minimum prices for barber services on a county-by-county basis. Title 59 O.S. 102 [59-102], et seq. (1971). Either upon the petition of sixty-six and two-thirds percent of the duly licensed, registered and practicing barbers of any county, or on their own initiative, the Board must investigate, give notice and hold a public hearing, and then set by official order the minimum price for all work usually performed in a barber shop in said county. Title 59 O.S. 102 [59-102], 59 O.S. 102.1 [59-102.1], and 59 O.S. 102.2 [59-102.2] [59-102.2] (1971). Violation of said order is a misdemeanor and constitutes grounds for revocation of the violator's license. Title 59 O.S. 102.4 [59-102.4] (1971). Conduct in violation of said order is also subject to an injunction by the Board. Title 59 O.S. 102.5 [59-102.5] (1971). Any legislation setting prices brings into question the Sherman Antitrust Act, 15 U.S.C. § 1, which provides in pertinent part: "Every contract, combination in the form of trusts or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal . . . ." The case of Goldfarb v. Virginia State Bar, ___ U.S. ___,95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), is the most recent landmark decision in this area. Therein the United States Supreme Court unanimously held that minimum fee schedules for legal services issued by a county bar association was a form of price fixing and, therefore, anti-competitive and prohibited by Section 1 of the Sherman Act, supra. The Goldfarb opinion strikes directly at the anti-competitive nature of a minimum fee schedule. However, it is well settled that the Sherman Act does not prohibit state action, even if state action would violate the Sherman Act if performed by individuals. The Goldfarb decision squarely faced the state action question. The decision was not affected by the state action doctrine because the minimum fees in question were not state action or authorized by the state. The minimum fees were voluntarily enacted by a county bar association. No Virginia statute required such minimum fees; the Virginia Supreme Court's ethical code did not require any minimum fees, and there was no indication that the Virginia Supreme Court approved of ethical opinions concerning minimum fees by the State Bar Association. The Supreme Court concluded: "In our view that is not state action for Sherman Act purposes. It is not enough that . . . anti-competitive conduct is 'prompted' by state action, rather, anti-competitive activities must be compelled by direction of the State acting as a sovereign." The Supreme Court on numerous occasions has found anti-competitive activities beyond the reach of the Sherman Act because they did constitute state action. The bench mark case is Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307,87 L.Ed. 315 (1943), wherein the State of California had enacted a series of statutes with the following stated purpose: "To restrict competition among the growers and maintain prices in the distribution of their commodities to packers. The declared purpose of the Act is to 'conserve the agricultural wealth of the State' and to 'prevent economic waste in the marketing of agricultural products' of the state." The California act goes on to set up a commission to create mandatory marketing programs for various geographical areas. The mandatory marketing plan then controls all subsequent sales and prices of a product. Criminal penalties are imposed for violation of the plan. The Supreme Court found that the Sherman Act prohibited anti-competitive activities by private individuals but did not reach anti-competitive activities that were state action. "It derived its authority and its efficiency from the legislative command of the state and was not intended to operate or become effective without that command. We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature . . . The Sherman Act makes no mention of the state as such, and gives no hint that it was intended to restrain the state action or official action directed by a state . . . Here the state command to the commission . . . is not rendered unlawful by the Sherman Act since, in view of the latters words and history, it must be taken to be a prohibition of individual and not state action." The Parker v. Brown doctrine has been followed regularly. Courts have consistently found that anti-competitive state action regarding goods and services, (publicity campaigns, advertising billboards, bus service and insurance) was beyond the reach of the Sherman Act. Eastern Railroad President's Conference v. Noerr Motor Freights, 365 U.S. 127, 81 S.Ct. 523,5 L.Ed.2d 464 (1961); Howard v. Colorado Department of Highways, 478 F.2d 581 (10th Cir. 1973); Ladue Local Lines v. By-State Development Agency, 433 F.2d 131 (8th Cir. 1970); Allstate Insurance v. Lamir, 361 F.2d 870 (4th Cir. 1966). Since the minimum barber prices are set by an official Oklahoma board acting pursuant to a specific state law, such action constitutes state action and thus is not within reach of the Sherman Act. A previous Attorney General's opinion held that architects may not agree among themselves to fix or set minimum fee. 7 Okl. Op.A.G. 51 (No. 74-137). That opinion was consistent with the above-cited cases because no state action was involved, but only contemplated action between private individuals to fix prices and frustrate competition. With the antitrust issue answered, it must be noted that there is much general authority for a state to promote the security and well being of its people. "The State, in performing its essential function in promoting the security and well being of its people, enjoys a broad discretion, the range of which accords with the subject of its exercise, and public matters concerning people of the state at large in common with the inhabitants of a given community are clearly within the sovereign jurisdiction of the state to administer, regulate, or control. Generally, the state has a sovereign right to engage in any activity not prohibited by the federal constitution or the state constitution, and the determination of what governmental functions the state shall undertake is made by the state legislative department. So the state may venture into activities definitely impressed with a public purpose, and it may legislate to promote the interests of any state industry, since the welfare of the people depends on the success of the industries of the state. The promotion of the general welfare which incidently benefits certain individuals is proper. C.J.S. States, page 925-926." The Oklahoma Legislature acted pursuant to this power in establishing the barber minimum price statutes. 59 O.S. 102 [59-102] was originally enacted in 1937. It was repeatedly found to not violate any constitutional guarantees: "We inquire whether there is a reasonable connection between the price control features of this law and the public health. Laws relating to the sanitary requirements for barber shops are concededly valid under the police power. But, says the legislature, in effect, we find that in general there have been such cutting of prices and unfair competition that the average barber cannot meet the health and sanitary demands of the law; we find that if prices can be established so that barber shops can receive not less than a certain amount for their services they can maintain these standards, so we shall provide for adjusting and raising prices if necessary to the extent and that extent only that may be needed to maintain the health and sanitary requirements. The Legislature has declared that the relationship between prices and sanitary and health requirements exists. In the general features of the law we find nothing to disprove that such relationship does exist." Herrin v. Arnold, Okl., 82 P.2d 977, 981 (1938). "The accepted conception of the police power of the state and the recognized fact that the barber industry is within the regulatory power of the state as to sanitary and health conditions, it cannot be held that the price control sections of 59 O.S. 102 [59-102] (1937) are so arbitrary, discriminatory, or unreasonable in their general features, as to violate the provisions of either the state or federal constitutions which deal with liberty, due process or freedom of contract." Jarvis v. State Board of Barber Examiners, Okl., 83 P.2d 560, 561 (1938). "We are firmly of the opinion, that if the legislature of this state has the right to regulate the barber industry of this state in the interest of public health and sanitation . . . under the exercise of the police power, then it has the power, through the Barber's Board . . . to fix and determine the minimum prices which may be charged by those engaged in the barber business, in designated areas, so that the public may be served by barbers who are not only skilled, but free from contagious disease, and that while so conducting their business in compliance with the laws of this state, they may at the same time be afforded a fair return on their investment and their labor." Ex parte Herrin, Okl. Cr., 93 P.2d 21, 39 (1939) . See also Sparks v. State, Okl. Cr., 115 P.2d 277 (1941), and Vandervort v. Keen, Okl., 85 P.2d 405 (1938). There are no Oklahoma constitutional or federal antitrust barriers to prevent the State Board of Barber Examiners from setting minimum price schedules for licensed members of the barber profession. Your second question covers a very broad area. As in the barber cases quoted above, absent express legislation to the contrary, the general rule is that a regulatory agency may legally set minimum prices made to the public for certain services only if such minimum prices bear a direct relationship to the health, safety or welfare of the public at large. Such a determination is a question of fact to be determined under the circumstances of each case. Your third and fourth questions are similarly answered. If such minimum charges are found in a given case to be lawful, the method of imposing said charges, whether on a uniform statewide basis or on a county-by-county basis, will again depend on the particular facts of the case. It is, therefore, the opinion of the Attorney General that your questions be answered as follows. The State Board of Barber Examiners may set a minimum price schedule for the licensed members of the barber profession pursuant to existing legislation so long as such a price schedule is not arbitrary or capricious but bears a direct relationship to the health, safety or welfare of the people of Oklahoma. Absent express legislation to the contrary, the general rule is that a regulatory agency may legally set minimum prices made to the public for certain services only if such minimum prices bear a direct relationship to the health, safety or welfare of the public at large. Such a determination is a question of fact to be determined under the circumstances of each case. If such minimum charges are found in a given case to be lawful, the method of imposing said charges, whether on a uniform statewide basis or a county-by-county basis will again depend on the particular facts of the case. (DANIEL J. GAMINO) (ksg)